FILED
UNITED STATES BANKRUPTCY COURT
DISTRICT OF HAWAII

JUN 1 4 1988

at 2 o'clock and 45 min. P M.
DOROTHY K. IPFONGI, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In the Matter of | ) | BK. NO. 76-0512 |
| | ) | (Chapter X) |
| THE HAWAII CORPORATION, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ——————————————————— | ) | |

REPORT ON UNCLAIMED FUNDS
DEPOSITED WITH THE COURT
(TOGETHER WITH INFORMATION
RESPECTING FUTURE DISTRIBUTIONS)

DON JEFFREY GELBER
GELBER & GELBER
Suite 1400, Hawaii Building
745 Bishop Street
Honolulu, Hawaii 96813
Telephone No. 524-0155

Attorney for John T. Goss
Trustee

JOHN T. GOSS
Suite 1311
1188 Bishop Street
Honolulu, Hawaii 96813
Telephone No. 536-6602

Trustee in Reorganization

I HEREBY CERTIFY THAT A COPY
WAS MAILED TO THE PARTIES ON
6/14/88

2370

# TABLE OF CONTENTS

                                                           Page

I.   INTRODUCTION .........................    1

II.  SOURCES OF THE UNCLAIMED FUNDS ........    2

III. SUGGESTED PROCEDURES FOR DISTRIBUTION ..   2

        A.   Distribution   to   Unsecured
             Creditors ........................   3

        B.   Distribution to APG Subordi-
             nated Noteholders .................   4

        C.   Distribution  On  Account  Of
             Preferred Stock ...................   8

        D.   Distribution  to  Holders  of
             Common Stock ......................   8

        E.   Interest ..........................  18

        F.   Caveat ............................  19

## Schedules

        I.       Schedule of Funds Deposited With the United
                 States District Court

       II.       Schedule of Creditors Who Have Not Claimed
                 Their Distribution

      III.       Schedule of APG Subordinated Noteholders Who
                 Have Not Claimed Their Distribution

       IV.       Schedule of Preferred Stockholders Who Have
                 Not Claimed Their Distribution

        V.       Schedule of Common Stockholders Who Have
                 Waived Their Stock Interest

VI.          Schedule of Former Falcon Capital Corporation Shareholders Who Have Not Claimed Their Distribution

VII.        Schedule of Common Stockholders Who Have Not Cashed One or More Distribution Checks

VIII.      Stockholder Ledger Cards For Common Stockholders Who Have Not Claimed Their Distribution

<u>Exhibits</u>

A.          Form of Application for Distribution on Account of APG Subordinated Notes; Order

B.          Form of Application for Distribution on Account of Stock Interest; Order

2RJF0243

I.  <u>INTRODUCTION</u>

John T. Goss, Chapter X Trustee of The Hawaii Corporation ("THC"), is depositing with the Court, concurrently with the filing of this report, the sum of $448,957.04. The Trustee is making this deposit in conformity with the Court's Order in Aid of Consummation of Plan (Unclaimed Funds), filed on September 19, 1986. That order provides, in summary, that the Trustee is to deposit all funds of the estate which remain unclaimed upon the closing of the case, and that the Clerk of the Court is to hold such funds "to be dealt with in accordance with section 66a of the Bankruptcy Act and Bankruptcy Rule 310."

Section 66a of the Bankruptcy Act and Bankruptcy Rule 310[1] provide that such funds may be withdrawn as provided in 28 U.S.C. § 2042. Section 2042, in turn, provides that "any claimant entitled to such money may, on petition to the court and upon notice to the United States

---

1.  Because the THC bankruptcy case was commenced prior to the effective date of the Bankruptcy Code, the case is governed by the former Bankruptcy Act and the Bankruptcy Rules which applied to Bankruptcy Act cases.

attorney and full proof of the right thereto, obtain an order directing payment to him."

This report has two purposes: first, to indicate the sources of the unclaimed funds and the persons who are entitled to those funds; and second, to describe procedures which the Court may wish to employ in processing claims to distribution from the unclaimed funds.

II. SOURCES OF THE UNCLAIMED FUNDS

Although the Trustee has gone to considerable effort to locate the creditors and stockholders who are entitled to distributions from the estate (and thereby to minimize the amount of funds which the Clerk must administer), the Trustee has been unable to distribute all of the estate´s funds. Schedule I shows the total amount of the unclaimed funds, and indicates the categories of creditors and stockholders who are entitled to those funds.

III. SUGGESTED PROCEDURES FOR DISTRIBUTION

As Schedule I reflects, there are creditors and stockholders in several categories who failed to claim their distributions. The procedure for making distribution differs depending upon the category of claim or interest involved. Therefore, each category will be discussed separately.

The procedures suggested below are not the same as those which the Trustee followed while he was administering

the funds of the estate. At that time, the Court established a procedure for making distribution which was designed to conform with the normal procedures for redeeming securities in the securities industry, and which included numerous safeguards to insure that the persons to whom distributions were made were, in fact, the persons entitled to those distributions. This cautious procedure was cumbersome but justified, at the time, in light of the large amount of funds which the Trustee then held. Now that all but a small portion of the funds have been distributed, the Court may wish to adopt (and the Trustee recommends) a less rigorous set of procedures such as those suggested below.

A.   <u>Distribution to Unsecured Creditors</u>

Only four unsecured creditors failed to claim the dividends to which they were entitled (in the aggregate amount of approximately $1,860.00). The names and addresses of the four creditors are listed in Schedule II attached hereto. If one of the four creditors claims their dividend, we suggest that the Clerk require such creditor to file a proof of claim in the normal form and submit it to the Court for review and approval.

B.   Distribution to APG Subordinated Noteholders

Pursuant to court order, the THC Trustee made bulk distributions to the Bank of America, which, in turn, made distributions (as Indenture Trustee) to the individual holders of "6-1/4 % Collateralized Convertible Subordinated Notes due September 1, 1978" issued by American Pacific Group, Inc., THC's corporate predecessor (the "APG Subordinated Notes"). The Bank of America was unable to locate and make distribution to some of the noteholders, and returned the unclaimed funds to the THC Trustee; the THC Trustee is, in turn, depositing those funds with the Court. A schedule of the noteholders who did not claim their distributions is attached as Schedule III.

When making distributions, the Bank of America required the noteholders to comply with the usual procedures employed by the securities industry in making distribution to debenture holders.[2] The Trustee has developed a simplified procedure which is embodied in the suggested form of Application for Distribution on Account of APG Subordinated Notes, a copy of which is attached hereto as

_____

2.   This procedure is established and described in the Order in Aid of Consummation of Plan (Distribution to Indenture Trustee), filed on March 3, 1983.

Exhibit "A."  In completing the form, the Clerk should take the following steps:

1.  The Clerk must first check the Trustee's list of noteholders who have not claimed their distribution. This list is attached hereto as Schedule III.  If the claimant does not appear on the list, the Clerk should see if a prior owner of the same APG Subordinated Note is on the list.  If neither the claimant nor a prior owner appears on the list, then distribution has already been made on the claimant's note, and the claimant is not entitled to any further distribution.  (A cross-check should also be made to Section VII of the Trustee Supplemental Final Accounting. That section contains a list prepared by the Bank of America of noteholders whom the Bank paid.)

2.  As the form indicates, the claimant generally must surrender the APG Subordinated Note itself to the Clerk.  The claimant should endorse each note in the following manner:  "For value received, I hereby sell, assign, and transfer this note unto the Clerk of the United States Bankruptcy Court for the District of Hawaii," followed by the date and the claimant's signature.  If the face of the note indicates that the note is held by more than one person, all named persons must endorse the note. If one or more of such persons is deceased, and if the claim is made by the surviving owners, then the survivors should

attach a certified copy of the death certificate. If a certified copy of the death certificate is not available, a copy of the mortuary receipt, funeral notice, or other appropriate documentation may be sufficient. If a personal representative is making a claim on behalf of a decedent's estate, then the personal representative should attach a certified copy of the letters testamentary or equivalent document.

3. If the claimant is not the person whose name appears on the face of the note, the Clerk must:

A. Determine that all necessary endorsements appear on the reverse of the note. If there is a break in the chain of endorsements,[3] there is a possibility that the security has been stolen or otherwise fallen into the wrong hands, and that, therefore, the person presenting the note is not entitled to any distribution. The Clerk should check the chain of endorsements and alert the Court if there are any gaps or other discrepancies. The

---

3. For example, suppose that a note, registered in the name of Mr. A, is presented by Ms. D. If the note has been endorsed from Mr. C to Ms. D but there is no endorsement connecting Mr. A with Mr. C, there is a break in the chain of endorsements. It can be difficult to track the chain of endorsements because the notes are often endorsed in blank, in which case anyone in possession of the note can make a claim.

Court may wish to require such claimants to cure any problems by obtaining the necessary endorsements or other confirmation that the party whose endorsement is missing does not claim an interest in the note.

B. Require the claimant to attach to and file with the application the following additional evidence of ownership, depending upon the manner in which the claimant acquired the note:

(i) Inheritance -- A certified copy of the order of distribution should be attached.

(ii) Gift -- Evidence must be attached to substantiate the gift.

(iii) Divorce -- A certified copy of the divorce decree should be attached, or other evidence must be supplied that the divorce resulted in a transfer of the note to the claimant.

(iv) Sale -- Evidence of sale of the note to the claimant.

(v) Other methods of transfer -- Appropriate evidence, depending upon the circumstances, should be attached to demonstrate that the claimant is the lawful owner of the note.

4. The application must be properly executed. If the note is registered in the name of the claimant, the signature on the application for payment should correspond

in every particular, without alteration, enlargement, or any change whatsoever, with the name appearing on the face of the note. If the claimant presents various notes on which the claimant's name is stated differently (for example, if a middle initial is used on some of the certificates and others contain the claimant's full middle name), the claimant should be required to indicate, on the application, that all of the names refer to a single person (for example, by filling in the space for the name of the claimant as "John Q. Public, also known as John Quincy Public").

5. Finally, the Clerk must calculate the amount of distribution to which the claimant is entitled. The section of the attached application in which the calculation is performed is self-explanatory.

C. Distribution On Account Of Preferred Stock

Only one of THC's preferred stockholders failed to claim his distribution. See Schedule IV attached hereto. In the unlikely event that that person makes a claim in the future, we suggest that the Clerk follow the same procedures which are outlined below in the case of common stock. The only modification which must be made is that the amount distributable per share of preferred stock is $30.83.

D. Distribution to Holders of Common Stock

We have also prepared a suggested form of Application for Distribution on Account of Stock Interest, a

copy of which is attached hereto as Exhibit "B." Although this application contains fewer safeguards than the Court imposed while the Trustee was in office,[4] it will, if adopted, be easier for the claimants, the Clerk, and the Court to administer, and includes a reasonable degree of protection against incorrect distributions.

The proposed form is simple and largely self-explanatory. In completing and processing the form, the Trustee suggests the following procedures.

1. The Clerk must first check the Trustee's list of stockholders to whom distribution has been made to be sure that the claimant (or another owner of the stock interest in question) has not already been paid. This list is entitled the "Schedule of Distributions to Common Stockholders," and has been filed as Section IX of the Trustee's Supplemental Final Accounting, filed on June 10, 1988.

Section IX is in two volumes. Volume I relates to the First and Second Distributions to common stockholders; Volume II relates to the Third Distribution. Each volume of

_____

4. The order establishing and describing the procedure which the Trustee used in connection with distributions to common stockholders is the Order in Aid of Consummation of Plan (Distribution to Stockholders), filed on November 15, 1985.

the print-out consists of three parts: Part 1, entitled "Listing of All Hawaii Corporation/Common Shareholders" (Volumes 1 and 2, pages 6-602 in each Volume); Part 2, entitled "Listing of All American Pacific Shareholders" (Volumes 1 and 2, pages 603- 660 in each Volume); and Part 3, entitled "Listing of All Protective Security Shareholders" (Volumes 1 and 2, pages 661-672 in each Volume).[5] For convenience, the entire document is referred to in this report as the "stock register."

The print-out identifies each recipient, the number of shares of record, the address, and the amount paid. If the information for a particular claimant under the headings "First Distribution," "Second Distribution," or "Third Distribution" is either blank or crossed out, distribution to that claimant was not made.[6] If the

---

5. American Pacific Group, Inc. ("APG") was THC's former parent which was acquired by THC in a stock-for-assets acquisition and reorganization and, effectively, "merged into" THC. Protective Security Company ("PSC") was a corporation previously acquired by APG and effectively "merged into" it. At the time of the THC bankruptcy, there existed holders of record of APG and PSC stock who had not exercised their conversion rights.

6. All stockholders who waived their distribution rights (Schedule V) have been eliminated from the stock register.

For the most part, the stock register lists the
(Footnote Continued)

estate's check was not cashed, that fact does not appear in the print-out. A separate list of shareholders who did not cash their distribution checks is attached hereto as Schedule VII.[7]

If the stock register indicates that checks were issued to the claimant, and the claimant's name does <u>not</u> appear on the list of stockholders who did not cash their checks, the claimant has already been fully paid. If the claimant appears on the list of persons who failed to cash their checks, the claimant is entitled to receive the amount of the uncashed check. If the claimant does not appear on either list, the clerk must follow the steps described in the numbered paragraphs below.

2. Next, the Clerk must check the separate list of stockholders who have waived their rights to receive distributions (Schedule V attached hereto) to be sure that

_____

(Footnote Continued)
stockholders in alphabetical order. There is a list attached to the inside front cover of each volume of the register which indicates the stockholders who do not appear in alphabetical order and provides a cross-reference to their location on the list.

7. It is necessary to check each of the lists, not only for the claimant's name, but also for the names of prior owners of the same stock. Because a person who has disposed of his stock might try to obtain (improperly) a distribution, it is therefore necessary to be sure that a <u>subsequent</u> (and rightful) owner of the same stock has not been paid or waived the right to receive payment.

the claimant or a prior owner of the same stock has not waived the right to receive the distribution.

THC had in excess of 2,000,000 shares outstanding, scattered in the hands of more than 7,000 different shareholders. At the commencement of the proceedings, and for some time thereafter, it appeared that the assets of the estate might not be sufficient, upon liquidation, to make a distribution to stockholders. Moreover, many stockholders held a de minimis number of shares of common stock, e.g., less than 20 shares. As the proceedings progressed, it became apparent that distributions would be made to preferred and common stockholders, and, eventually, the aggregate amount payable to common shareholders was determined to be approximately $2.00 per share. Nonetheless, certain common stockholders, mostly holders of a de minimis number of shares, did not file proofs of stock interest and indicated a willingness to waive their respective stock interests. Pursuant to the Court's Order, filed November 10, 1986, the Trustee was authorized to, and did, obtain written waivers of stock interests from these persons in order to increase the funds distributable by the estate to other stockholders.

Section V consists of a schedule of stockholders of record who have waived and released any stock interest they have in the THC estate. The schedule is presented in

three parts: Part 1, "Shareholders of Record of The Hawaii Corporation Who Have Waived Their Stock Interest in The Hawaii Corporation"; Part 2, "Shareholders of Record of American Pacific Group, Inc. Who Have Waived Their Stock Interest in American Pacific Group, Inc. and The Hawaii Corporation"; and Part 3, "Shareholders of Record of Protective Security Company, Who Have Waived Their Stock Interest in Protective Security Company, American Pacific Group, Inc. and The Hawaii Corporation." (As discussed above, Protective Security Company was acquired by and "merged into" American Pacific Group, Inc. American Pacific Group, Inc. was THC's former parent which was acquired by and "merged into" THC.)

3. As the form indicates, the claimant generally must surrender the stock certificate(s) to the Clerk. (If the claimant states that he does not have the certificate, please refer to paragraph D.4., below.) The claimant should endorse the certificate in the following manner: "For value received, I hereby sell, assign, and transfer unto the Clerk of the United States Bankruptcy Court for the District of Hawaii the shares of stock represented by the attached certificate," followed by the date and the claimant's signature. If the face of the certificate indicates that the stock is held by more than one person, all named persons must endorse the certificate. If one or more of such

persons is deceased, and if the claim is made by the surviving owners, then the survivors should attach a certified copy of the death certificate. If a certified copy of the death certificate is not available, a copy of the mortuary receipt, funeral notice, or other appropriate documentation may be sufficient. If a personal representative is making a claim on behalf of a decedent's estate, then the personal representative should attach a certified copy of the letters testamentary or equivalent document.

    4. As in the case of the APG Subordinated Notes, if the claimant is not the person whose name appears on the face of the certificate, the Clerk must:

    A. Determine that all necessary endorsements appear on the reverse of the stock certificate. If there is a break in the chain of endorsements, there is a possibility that the security has been stolen or otherwise fallen into the wrong hands, and that, therefore, the person presenting the certificate is not entitled to any distribution. The Clerk should check the chain of endorsements and alert the Court if there are any gaps or other discrepancies. The Court may wish to require such claimants to cure any problems by obtaining the necessary endorsements or other confirmation that the party whose

endorsement is missing does not claim an interest in the stock.

B. Require the claimant to attach to and file with the application the following additional evidence of stock ownership, depending upon the manner in which the claimant acquired the stock:

(i) Inheritance -- A certified copy of the order of distribution should be attached.

(ii) Gift -- Evidence must be attached to substantiate the gift.

(iii) Divorce -- A certified copy of the divorce decree should be attached, or other evidence must be supplied that the divorce resulted in a transfer of the stock to the claimant.

(iv) Sale -- Evidence of sale of the stock to the claimant.

(v) Other methods of transfer -- Appropriate evidence, depending upon the circumstances, should be attached to demonstrate that the claimant is the lawful owner of the stock.

5. If the claimant is unable to surrender his or her certificate, there is a substantially greater risk that an incorrect distribution might be made. In order to verify that the person claiming the distribution is entitled to receive it, the Clerk must check the stock ledger card

(Schedule VII filed herewith) under the name of the claimant. If the ledger card indicates that the claimant disposed of his stock, the claim should be rejected.[8] If there is no ledger card, the clerk must see whether there is a ledger card under the name of the person from whom the claimant bought the stock. If there is no such card, then it is probable tht full distribution has already been made on the stock, and the claimant is entitled to nothing further. If there is a ledger card and the card indicates that the claimant did not dispose of his stock, the claimant is probably entitled to a distribution.

6. The application must be properly executed. If the stock certificates are registered in the name of the claimant, the signature on the application should correspond in every particular, without alteration, enlargement, or any change whatsoever, with the names appearing on the face of the stock certificate. If the claimant presents various stock certificates on which the claimant's name is stated differently (for example, if a middle initial is used on

---

8. The ledger cards have not been updated for many years. It is possible that a claimant whose ledger card shows that he sold his stock later acquired more stock. Such a person should be required to produce evidence that the stock which he claims is not the stock which the ledger card shows that he already sold.

-16-

some of the certificates and others contain the claimant's full middle name), the claimant should be required to indicate, on the application, that all of the names refer to a single person (for example, by filling in the space for the name of the claimant as "John Q. Public, also known as John Quincy Public").

7.     Prior to the bankruptcy proceeding, THC entered into a number of transactions with other corporations (called Protective Security Company ("PSC"), American Pacific Group, Inc. ("APG"), and the Von-Hamm Young Company, Ltd. ("VHY")), pursuant to which the stockholders of PSC, APG, and VHY became entitled to exchange their shares for stock in THC. Some of the PSC, APG, and VHY stockholders never presented their stock for conversion; nevertheless, those persons may be entitled to distribution as if they were the holders of THC stock. In such instances, the claimant must indicate which of those companies issued the stock by writing the issuing company's name on the application next to the certificate number, and the Clerk must then determine how many shares of THC stock are equivalent to the number of shares of PSC, APG, or VHY stock held by the claimant. The conversion ratios are as follows: one share of VHY stock is equivalent to one share of THC stock; 2.65 shares of APG stock are equivalent to one share of THC stock; and 7.0755 shares of PSC stock are

equivalent to one share of THC stock. Therefore, a person who holds 100 shares of stock in PSC would be entitled to distribution as if such person held 14.133 shares of THC stock (because 100 divided by 7.0755 equals 14.133). A person holding 100 shares of APG stock would be entitled to distribution as if such person held 37.736 shares of THC stock (because 100 divided by 2.65 equals 37.736). The stock register already reflects the conversion factors, so no further conversion is required.

8. Finally, the Clerk must calculate the amount of distribution to which the claimant is entitled. The section of the attached application in which the calculation is performed is self-explanatory. The "Funds Deposited Per Share" depends on which schedule the stockholders are listed on. The stockholders who failed to cash one or more checks (i.e., those whose names appear on Schedule VII) are entitled to the amounts set forth on that schedule. If no interest is earned (or paid out) on any of the deposited funds, and if no other adjustment is made, the stockholders who are listed in Schedule VI would be entitled to $1.37 per share, and all other stockholders not previously paid would be entitled to $2.08 per share. As indicated below, the Trustee recommends that the funds deposited with the Court be held in interest-bearing accounts. If this is done, the Court and the Clerk should consider paying to all

stockholders listed in Schedule VI a minimum of $1.45 per share, and to all other stockholders not previously paid a minimum of $2.16 per share. These higher per share amounts were paid to other similarly-situated stockholders during the course of the proceeding. A court-approved settlement shortly before the close of the case had the effect of decreasing the amount distributable (in the absence of any additional earned interest) by 8 cents per share. The Court may wish to achieve "parity" and "equity" among shareholders by distributing the higher amounts in light of the fact that (i) it is unlikely that all heretofore unlocated shareholders will come forward and make claims to the deposited funds and (ii) any interest earned on the deposited funds will quickly offset the difference.

    E.   <u>Interest</u>.

Under 28 U.S.C. § 2042, it is unclear whether the claimants are entitled to interest on the deposited funds. The distribution amounts above assume that interest will not be paid. The Court may, however, find it appropriate to direct payment to the claimant of a pro rata share of the interest actually earned on the funds. In any event, the Trustee suggests that the funds be held in an interest-bearing account.

F.    Caveat.

It should be kept in mind that it is impossible to devise a procedure which (1) covers all conceivable situations and (2) precludes all possibility of improper distributions. Some assurance is provided by the fact that the applications are made under penalty of perjury. Nevertheless, the clerk should be alert to any suspicious circumstances and bring them to the Court's attention.

DATED:  Honolulu, Hawaii, _June 14th 1988_ .

_____
DON JEFFREY GELBER
Attorney for John T. Goss,
Trustee

2RJF0258