# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>THE HAWAII CORPORATION,<br><br>Debtor. | Case No. 76-00512<br>Chapter X Corporate Reorganization<br>Under the Bankruptcy Act of 1898<br><br>Re: Docket No. 17 |

## MEMORANDUM CONCERNING RECEIVER'S MOTION FOR TURNOVER

## I.  INTRODUCTION

On December 16, 1976, The Hawaii Corporation ("THC") filed a voluntary petition for an Arrangement under Chapter XI of the Bankruptcy Act of 1898, as amended. The proceedings were later converted to proceedings for a Corporate Reorganization under Chapter X of the same Bankruptcy Act. The corporate reorganization was administered by the United States District Court for the District of Hawaii.

The Bankruptcy Act was repealed and replaced by the Bankruptcy Reform Act of 1978. (the "Bankruptcy Code").

The Bankruptcy Code applies to all bankruptcy cases filed on or after October 1, 1979, but cases commenced under the Bankruptcy Act continue to be

governed by that Act. (Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, §§ 401, 402 and 403, 92 Stat. 2549, 2682-83.)[1]. The Bankruptcy Act governs this case.

Robert B. Amidon (Amidon), a receiver for THC appointed by the United States District Court for the Central District of California pursuant to a 2009 default judgment against THC, moves for turnover of unclaimed funds in the amount of $376,371.89, now held in the United States Treasury. The unclaimed funds originate from uncashed distribution checks issued to creditors and shareholders of THC pursuant to its plan of reorganization. Checks issued to numerous creditors and shareholders were never negotiated. Many creditors and shareholders had moved to new addresses during the several years that it took to administer the reorganization case, but had not reported their address changes to the court or the trustee. Therefore, some checks never reached the intended payees.

Receiver Amidon's motion was heard on April 15, 2010. Amidon appeared on his own behalf. Also present were Don Jeffrey Gelber, Esq., (Gelber) former counsel for the trustee in bankruptcy in the THC corporate reorganization, and

---

[1] For ease of reference, Public Law No. 95-598 is printed, in full, in Appendix Vol. A, Collier on Bankruptcy, (15th ed. 2000). The cited sections are at pages designated App. Pt. 4-189, 190.

Assistant United States Attorney Edric M. Ching.

## II. FACTS

### A. The Hawaii Corporation and THC Financial Corporation

THC was a Hawaii corporation that did business directly and through subsidiaries. One of its major subsidiaries was THC Financial Corporation ("THCF"), an industrial loan company. THCF was also a corporate reorganization debtor, but in a different Chapter X case, No. 76-00493, in the United States District Court for the District of Hawaii . The reorganization cases of THC and THCF had separate reorganization trustees and reorganization plans. The cases were never consolidated or jointly administered.

### B. The THC Chapter X Corporate Reorganization,

This case commenced with the filing of an Original Petition Under Chapter XI on December 16, 1976. Dkt. No. 1.[2] On March 21, 1977, the United States District Court for the District of Hawaii converted the case to one under Chapter X of the Bankruptcy Act and appointed a trustee. Dkt. No. 96. On July 8, 1980, the trustee filed a plan of reorganization which proposed an orderly liquidation of all assets over a reasonable period of time for "obtaining the greatest return to the

---

[2] Citations to docket entries refer to docket numbers in the original file. The case was commenced prior to the court's use of PACER. Certain documents were uploaded to PACER for the benefit of all parties in filing and responding to the motions for turnover.

creditors of the estate." Dkt. No. 994 at 1. The plan anticipated that proceeds from the liquidation would not be sufficient to make distributions to preferred and common stockholders. Dkt. No. 994 at 9.

The district court entered an order confirming the plan on December 30, 1980. Dkt. No. 1151. The order provided for a distribution to stockholders, in accordance with provisions of the plan, if assets were sufficient. Id. at 8. Further, the order provided that the court reserved "full right and jurisdiction to make at any time, and from time to time, such orders in aid of the consummation of the Plan of Reorganization as the Court shall deem proper." Id. at 9.

The confirmed plan directed the Trustee to complete the orderly liquidation of assets within two years following the date of confirmation and to proceed to finalize all remaining unresolved claims by and against the estate. Dkt. No. 994 at 8. Because all claims by and against the estate could not be resolved within two years, the Trustee sought, and was granted, extensions of the period in which to complete the liquidation of assets. Dkt. Nos. 1568, 1957.

Although litigation and certain claims remained unresolved, the district court authorized an initial *pro rata* distribution to creditors in an order entered January 17, 1983. Dkt. No. 1589. After this initial distribution of approximately $6.5 million to creditors, there existed a surplus of funds in the estate and on May

31, 1983, the court authorized a second *pro rata* distribution to creditors of approximately $3 million. Dkt. No. 1660. Following the second distribution, a further surplus existed and a third distribution to creditors of approximately $1.9 million was authorized on September 7, 1983. Dkt. No. 1715. As the Trustee noted in the application for the order, the third distribution would satisfy all allowed claims of creditors, except for legally subordinated claims of Class 5 members, and shareholder interests. Id. at 6.

There was a surplus in the estate after payment of the claims of all creditors. Therefore, on July 10, 1985, the Trustee sought authority to commence distribution of approximately $5 million to about 8,000 shareholders. Dkt. No. 2029 at 2. The district court entered an order on November 15, 1985, authorizing the distribution to holders of preferred and common stock, also setting forth various conditions concerning proof of stock ownership and surrender of certificates. Dkt. No. 2083. Such procedures were necessary to determine current ownership of interests, given the possibility that shares may have been transferred during the lengthy period between plan confirmation and distribution to shareholders. Dkt. No. 2029 at 7.

On July 29, 1986, the Trustee requested an order in aid of consummation of the plan to deal with uncashed distribution checks sent to creditors and

stockholders. Dkt. No. 2184. The following excerpt from the Trustee's application explains the Trustee's intentions with respect to any unclaimed funds.

> 5. In the Order Confirming Plan of Reorganization (at Paragraph G), the Court has reserved "full right and jurisdiction to make at any time, and from time to time, such orders in aid of the consummation of the Plan of Reorganization as the Court shall deem proper."
>
> 6. The Trustee requests that the Court authorize and instruct him to deposit the funds held by the Trustee following the Trustee's final distribution, in excess of a reserve for administrative expenses, in the registry of the United States District Court, to be dealt with in accordance with Section 66a of the Bankruptcy Act and Bankruptcy Rule 310.
>
> 7. The Trustee submits that the foregoing procedure is fair and reasonable and in the best interests of the estate and its creditors and stockholders. This procedure will allow the estate to be closed and wound up in a prompt manner. The rights of creditors and stockholders and other parties in interest will not be prejudiced, because, pursuant to Section 66a of the Bankruptcy Act, Bankruptcy Rule 310, and 28 U.S.C. § 2042 (which is incorporated by reference in Section 66a and Rule 310), the unclaimed funds are held indefinitely, first in the Court and subsequently in the United States Treasury, and may be claimed by the persons entitled to them at any time.

8. Although Sections 204 and 205 of the Bankruptcy Act and Bankruptcy Rules 10-405(b) and 10-406(b), not Section 66a and Bankruptcy Rule 310, ordinarily govern the handling of unclaimed money and securities in Chapter X cases, the Trustee requests that the procedures in Section 66a and Rule 310 be followed in this case, for the following reasons:

    A. The Plan in this case provides for the liquidation of the debtor corporation. In contrast, Sections 204 and 205 and the Rules derived therefrom have direct application to reorganization cases in which the debtor survives the bankruptcy proceedings or a new corporation acquires the assets of the debtor. Therefore, the provisions relating to unclaimed funds in straight bankruptcy are more appropriate in the circumstances of this case. In the Order Denying Motion for Order Modifying Plan and Declaration that Proposed Plan Does Not Materially and Adversely Affect the Interest of Any Creditor or Stockholder, filed herein on March 7, 1986, the Court stated that Section 66a of the Bankruptcy Act is applicable to Chapter X proceedings such as this.

    B. Section 66a and Rule 310 are actually more protective of the creditors and stockholders who do not receive or do not cash their distribution checks than are Sections 204 and 205. The latter

>           sections provide that any creditors or stockholders who do not present their claims in conformity with the plan within five years after the closing of the estate lose their claims forever, while funds deposited with the Court under Section 66a and Rule 310 are subsequently deposited in the United States Treasury, and may be claimed by the creditor or stockholder entitled to them at any time.
>
>   C.    This Court has determined, in a Chapter X liquidation proceeding involving a subsidiary of THC, that the trustee in that case should proceed with unclaimed funds in accordance with Section 66. See Order Denying Trustee's Motion for Approval of Modification of Plan of Reorganization, filed March 7, 1986, in In re THC Financial Corp., Case No. 76-0493, United States District Court for the District of Hawaii.

Dkt. No. 2184 at 3-5. Finding that the procedures proposed in the Trustee's application were appropriate for dealing with unclaimed funds in this Chapter X liquidation proceeding, the court entered an order on September 22, 1986, instructing the Trustee to deposit any funds held by the Trustee in excess of a reserve for administrative expenses, "in the registry of the United States District

8

Court, to be dealt with in accordance with Section 66a of the Bankruptcy Act and Bankruptcy Rule 310." Dkt. No. 2213 at 2.

On June 14, 1988, the Trustee filed a report on unclaimed funds deposited with the court. Dkt. No. 2370. The report noted that Schedule IX of the report, listing distributions to common stockholders, was filed separately in two volumes due to its size, showing a first and second distribution in Volume I and a third distribution in Volume II. Dkt. No. 2370 at 9. The court approved the Trustee's report, as well as the Trustee's supplemental final accounting and second supplemental final accounting, in the final decree entered July 25, 1988. Dkt. No. 2377. The final decree provided:

> 3. The Hawaii Corporation, the above-named debtor, is discharged from all its debts and liabilities, and all rights and interests of stockholders of the debtor are terminated, without prejudice to the rights of any person or entity under 28 U.S.C. § 2042 with respect to unclaimed funds deposited with the Court by the Trustee.
>
> 4. All persons and entities are permanently enjoined from taking any action to collect or enforce any debt or liability of or claims against the debtor (except that persons or entities entitled thereto may apply to the court for a distribution from the unclaimed funds deposited with the Court by the Trustee).

Id. at 3.

## C. The THC Financial Corporation Chapter X Corporate Reorganization, Case No. 76-00493

The bankruptcy case of THC Financial Corp. ("THCF"), a wholly owned subsidiary of THC, debtor in Case No. 76-00512, commenced with the filing of a Creditor's Petition and Summons for an involuntary bankruptcy, filed on December 8, 1976. Dkt. No. 1 (Case No. 76-00493). On December 16, 1976, THCF filed a Chapter XI Petition in Pending Bankruptcy Case, together with a plan. Dkt. No. 16 (Case No. 76-00493). The case was later converted to one under Chapter X, and a trustee was appointed on March 18, 1977. Dkt. No. 152 (Case No. 76-00493).

On December 30, 1977, the Trustee in THC sought to consolidate the two estates, filing applications in both cases. Dkt. No. 289; Dkt. No. 665 (Case No. 76-00493). The Trustee in the THCF objected and the matter was resolved in a memorandum agreement executed April 28, 1978, in which the THC Trustee agreed to withdraw with prejudice the application for consolidation. Dkt. No. 410. The court approved the agreement in an order entered July 5, 1978. Dkt. No. 438. Thus the two estates were never consolidated and each bankruptcy case proceeded separately, with an order confirming the plan for THCF entered September 18, 1978, and a final decree entered March 26, 1989. Dkt. Nos. 1064 (Case No. 76-

00493), 3044 (Case No. 76-00493).

D. **Eric Dangerfield, Omega Consulting, and Receiver Robert B. Amidon**

On October 30, 2007, in both the THC and THCF cases, Eric Dangerfield on behalf of Omega Consulting ("Omega"), a sole proprietorship existing under the laws of the State of Texas, filed motions with this court for release of the unclaimed funds.[3] The United States Trustee and the United States Attorney for the District of Hawaii opposed both motions. The United States Attorney, District of Hawaii opposed both motions. On August 19, 2008, Dangerfield withdrew both motions.

Thereafter, on February 3, 2009, Omega filed a civil action with the United States District Court for the Central District of California as the assignee of two THC shareholders. <u>Omega Consulting, as Assignee of Toni McCormick and the Estate of Gordon C. McCormick v. The Hawaii Corporation</u>, No. 09-CV-00845-CAS, in the United States District Court for the Central District of California. Plaintiff Dangerfield/Omega alleged fraud and mismanagement in the post-

---

[3] Eric Dangerfield, on behalf of Omega, has filed similar motions for turnover of funds in cases across the nation. In many cases, the motions were denied. See, <u>In re Conner Corporation</u>, 2008 Bankr. LEXIS 1899 (Bankr. E.D. N.C. June 11, 2008); <u>In re Future Trust, Inc.</u>, 387 B.R. 574 (8th Cir. B.A.P. 2008); <u>Bhat v. Bankruptcy Estate of Firstmark Corp.</u>, 2009 U.S. Dist. LEXIS 45489 (S.D. Ind. June 1, 2009); <u>In re Payroll Express Corp.</u>, 2008 Bankr. LEXIS 3496 (Bankr. S.D.N.Y. November 24, 2008); <u>In re Premium Sales Corp.</u>, 2008 Bankr. LEXIS 2880 (Bankr. S.D. Fla. September 9, 2008).

confirmation winding up of THC. Since THC had undergone a U.S. District Court supervised liquidation pursuant to a Chapter X plan of reorganization, the accuracy of such allegations seem speculative. Dkt. No. 58, p.1. In any event, default judgment was granted to Omega and against THC for the amount of $ 220,537.05, and Amidon was appointed receiver for THC.

On November 6, 2009, Amidon filed a motion with this court for turnover of funds in both the THC and THCF cases. Amidon claimed a right to the funds pursuant to 28 U.S.C. § 2042 and sections 204 and 205 of the Bankruptcy Act of 1898, the predecessors of current 11 U.S.C. §§ 347 and 1143. The United States Attorney filed a statement of no position. Dkt No. 38. Gelber filed a statement recalling the facts and issues surrounding that case. Dkt. No. 42.

On April 15, 2010, this court heard the motions for turnover. Amidon was given until May 14, 2010, to file a supplemental memorandum in response to Mr. Gelber's statement to the court with respect to the THC case.

On April 21, 2010, this court issued an order in the THCF case denying the motion for turnover of funds. Amidon's motion in the THCF case was denied, because the U.S. District Court's Order Appointing Receiver made no mention of THCF and did not authorize or direct Amidon, as receiver for THC, to take any action concerning the assets or affairs of THCF (case no. 76-00493; dkt. no. 31).

Amidon's initial pleading and subsequent memoranda argue that he is entitled to the funds pursuant to: (1) sections 204 and 205 of the Bankruptcy Act of 1898; (2) the Central District of California Order granting default judgment in the amount of $ 220,537.05 to Omega; and (3) the language in the THC reorganization plan concerning the distribution of funds.

## III. ISSUE

Do the proceeds of uncashed checks payable to creditors and shareholders of THC belong to THC and, therefore, to its receiver?

## IV. DISCUSSION

### A. THC Funds Deposited In The Court Registry

In his supplemental memorandum, Amidon argues that distribution of the remaining funds should be the responsibility of the former bankruptcy trustee, and not the court. This argument has no merit. The former reorganization trustee was discharged many years ago, and has no remaining responsibilities. Under section 66 of the Bankruptcy Act of 1898, and former Bankruptcy Rule 310, and the THC bankruptcy plan, the funds must remain with the court registry and, eventually, the U.S. Treasury.

Section 66a states:

> **§ 66. Unclaimed Moneys.**
> a. Dividends or other moneys which remain unclaimed for sixty days after the final dividend has been declared and distributed shall be paid by the trustee into the court of bankruptcy; and at the same time the trustee shall file with the clerk a list of the names and post-office addresses, as far as known, of the persons entitled thereto, showing the respective amounts payable to them. Such moneys and dividends shall be deposited and withdrawn as provided in ***title 28, United States Code, section 2042***, and shall not be subject to escheat under the laws of any State.

(emphasis added).

Rule 310 states:

> **Unclaimed Funds.**
> Sixty days after the distribution of the final dividend, the trustee shall stop payment of all checks then unpaid and file with the clerk of the district court a list of the names and addresses, so far as known, of the persons entitled to such payments and the amounts thereof. The unclaimed funds shall thereupon be deposited in the registry of the United States district court and shall be withdrawn as provided in Title 28, U.S.C. section 2042.

The current version of 28 U.S.C. § 2042 is presumed to be applicable to Receiver Amidon's motion to recover the funds in the U.S. Treasury, but the 1976 version of that statute would produce the same result.

14

Current 28 U.S.C. § 2042 states:

> **§ 2042. Withdrawal.**
> No money deposited under section 2041 of this title shall be withdrawn except by order of court.
>
> In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited into the Treasury in the name and to the credit of the United States. Any claimant *entitled* to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

(emphasis added).

The clerk of this bankruptcy court continues to maintain a list of the names and addresses of the persons entitled to payment from the THC funds, and the funds continue to remain in the United States Treasury. The amounts owed to these creditors comprise the total of the undistributed funds for THC creditors and shareholders. There is no excess or surplus which might belong to THC or its receiver. This court may only order the release of these funds to those who prove they are entitled to a portion of the money.

The entry of the final decree in the THC Chapter X proceedings relieved the bankruptcy trustee of any further duties or responsibilities. Dkt. No. 2377 at 3.

15

The former trustee has no power or control over the funds in the Treasury.

### B. Sections 204 and 205 of the Bankruptcy Act of 1898 Do Not Give The Receiver Any Rights To The Funds.

Amidon argues that under sections 204 and 205 of the Bankruptcy Act, he is entitled to the unclaimed funds because five years have passed since the closing of the estate. This argument fails for two reasons: (1) the Order In Aid of Consummation of the Plan (Unclaimed Funds) (dkt. no. 82) specifies that section 66a and Rule 310 govern distribution of unclaimed funds rather than sections 204 and 205; and (2) neither the United States District Court for the District of Hawaii nor the THC plan of reorganization set forth a time limitation in which creditors or shareholders' claims would expire.

First, under the application for the Order In Aid of Consummation of the Plan (Unclaimed Funds), the trustee specifically requested that section 66a and Rule 310 govern, rather than sections 204 and 205. Id. The trustee explained that sections 204 and 205 have direct application to reorganization cases in which the debtor survives the bankruptcy proceedings or a new corporation acquires the assets of the debtor. In contrast, the plan in this case provides for the liquidation of the debtor corporation. Section 66a and Rule 310 are more protective of the creditors and stockholders who do not receive or do not cash their distribution

checks. Id. at 4. Section 66a preserves the unclaimed funds for the rightful owners, with no time limit.

Second, nothing in the plan or by order of the court suggests that a time was fixed in which creditor and shareholder claims would expire. Section 204 of the Bankruptcy Act provides:

> Upon distribution, as provided in section 224 of this Act, *the judge may* upon notice to all persons affected, fix a time, to expire not sooner than five years after the final decree closing the estate, within which, as provided in the plan or final decree -
> (1) the creditors, other than holders of securities, shall file, assign, transfer, or release their claims; and
> (2) the holders of securities shall present or surrender their securities. After such time no such claim or stock shall participate in the distribution under the plan.

(emphasis added).

Under section 205, only upon expiration of a time fixed by the judge shall the cash or securities remaining unclaimed become property of the debtor or the new corporation acquiring the assets of the debtor under the plan.

The U.S. District Judge responsible for the THC Chapter X corporate reorganization did not fix a time or date for the expiration of claims and interests, as authorized by section 204 of the Bankruptcy Act of 1898. Therefore, the funds in the U.S. Treasury on account of uncashed checks issued to specific THC

creditors and shareholders can only be withdrawn from the Treasury for payment to those creditors and shareholders. Simply stated, sections 204 and 205 of the Bankruptcy Act of 1898 have no application to Amidon's turnover motion.

### C. The Receiver's Entitlement To The Funds Pursuant to The Central District of California Judgment

The U.S. District Court for the Central District of California entered an order granting default judgment to the plaintiff, in the amount of $ 220,537.05, against defendant THC. Amidon seeks to satisfy the judgment with the undistributed funds in the U.S. Treasury. However, those funds do not belong to THC, and Amidon may not satisfy a judgment against THC with monies that belong to others. See, In re Payroll Express Corp., 2008 Bankr. LEXIS at *7, holding that "[t]he creditors whose distributions were returned remain the rightful owners of the unclaimed dividends. They may apply for their unclaimed funds indefinitely into the future. Accordingly, the corporate debtor has no right to the funds."

### D. Entitlement To The Funds Based On The Language In The Bankruptcy Plan

Amidon argues that the liquidation plan provides guidance on what should be done with unclaimed funds, by indicating that the stockholders or former directors are now entitled to all of the funds. However, the THC liquidation plan

provides that "[i]f funds become available afer full satisfaction of all creditor claims, any surplus will be distributed to the stockholders". Dkt. No. 994 at 2. The United States District Court of Hawaii entered an order on November 15, 1985, authorizing the distribution of surplus funds to preferred and common stockholders. Dkt. No. 2029 at 2. Shareholders claiming an interest were required to file a claim with the court by February 10, 1986. Dkt. No. 2083. Distribution checks were issued to shareholders who filed claims, but many of the checks were returned as undeliverable and unclaimed.

The funds in dispute are not "remaining funds" or "surplus funds" after full distribution under the plan. They are unclaimed funds being held in the Treasury for the benefit of specific creditors and stockholders. See, Bhat v. Bankruptcy Estate of Firstmark Corp., 2009 U.S. Dist. LEXIS 45489 (S.D. Ind. 2009), where Omega Consulting sought release of the unclaimed funds on behalf of a major common stockholder of the debtor. The court denied the motion because the funds were not remaining assets after distribution under the plan but unclaimed funds. The entire amount of remaining funds held by the treasury has been allocated to named creditors and shareholders. Liquidated THC has no interest in those funds.

The receivers motion for turnover will be denied.

Dated: Honolulu, Hawaii, _____ JUN 2 5 2010 _____.

_____
Lloyd King
United States Bankruptcy Judge